

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-09-186-CR

ORONDAE LAVON MALONE                                        APPELLANT

V.

THE STATE OF TEXAS                                                STATE

------------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Orondae Lavon Malone was indicted on three counts of aggravated robbery. However, a jury convicted Appellant of the lesser included offense of robbery for all three counts and assessed his punishment at twenty years' confinement for each count. The trial court sentenced him accordingly, with the sentences to run concurrently. In one issue, Appellant contends that

---

[1] ... *See* Tex. R. App. P. 47.4.

the trial court erred by denying his motions to suppress. Because we hold that the trial court did not err, we affirm the trial court's judgment.

Background Facts

On March 15, 2006, Kyun Hansboro, whose last name was then Randle, Michael Hansboro, and Kyun's son were asleep when the front door of their house was kicked down and someone yelled, "Police. Police." Three men then entered the bedroom where Kyun, Michael, and the baby were sleeping, turned on the light, and demanded money. Kyun testified that she saw two guns. Kyun stated that the men took some of Michael's shoes during the robbery. Based on information provided by Michael and Kyun, the police suspected Appellant as one of the robbers.

On March 17, 2006, Greg Burt, who was an investigator with the Wichita Falls Police Department at the time of Appellant's arrest, testified that he went to the local Wal-Mart after hearing a dispatch call about a disturbance in which Appellant was involved. Investigator Burt was involved in the March 15 robbery investigation. He stated that it took him "[j]ust a few minutes" to get to the Wal-Mart. Investigator Burt stated that when he arrived at the Wal-Mart, Sergeant Leland Wright and other patrol officers were already present. Investigator Burt said that Appellant was detained when he arrived at the Wal-Mart. He testified that while the officers were "sorting out the events of the

disturbance," Officer LeeAnn Haldane called Sergeant Wright and told him that a warrant had been signed for Appellant's arrest for the March 15 robbery. Investigator Burt stated that he received notice of the arrest warrant after Appellant was detained. He further stated that Michael, one of the robbery complainants, told officers at the Wal-Mart that Appellant was wearing Michael's shoes, and thus, Appellant was in possession of stolen property.

Officer Haldane testified that on March 17, 2006, she was in a judge's office getting a warrant signed for Appellant's arrest for the March 15 robbery when she received a phone call from Sergeant Wright. Sergeant Wright told her that Appellant was involved in a disturbance at the Wal-Mart. Officer Haldane stated that she had already handed the judge the arrest warrant when she received the phone call. She stated that she told Sergeant Wright that the judge was reading the warrant and that she would notify him when it had been signed. After the judge signed the arrest warrant, Officer Haldane called Sergeant Wright and told him that the arrest warrant had been signed. Officer Haldane testified that approximately a minute or two minutes elapsed between the time that she received Sergeant Wright's phone call and when she told Sergeant Wright that the arrest warrant had been signed.

Officer Haldane further testified that she believed that the responding officers were justified in detaining Appellant and the other individuals involved

3

in the disturbance. She stated that it would take "quite some time" for the officers to sort out all of the information from the various reporting people to determine what had actually happened. She stated that it would be "common and necessary to detain as many people out there as [the officers] could to determine what actually happened at [the] Wal-Mart."

Appellant filed three separate motions to suppress: (1) a motion to suppress the evidence, (2) a motion to suppress the identification, and (3) a motion to suppress Appellant's statements. The trial court denied all three.

Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.[2] In reviewing the trial court's decision, we do not engage in our own factual review.[3] The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.[4] Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination

---

[2] *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

[3] *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).

[4] *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006).

4

of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.[5] But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo.[6]

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling.[7] When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings.[8] We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling.[9]

---

[5] … *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

[6] … *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

[7] … *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

[8] … *Kelly*, 204 S.W.3d at 818–19.

[9] … *Id.* at 818.

5

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings.[10] We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling.[11]

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.[12]

Fourth Amendment Searches and Seizures

In his sole issue, Appellant contends that the trial court erred by denying his motions to suppress because when the officers determined that he was not involved in any criminal activity at the Wal-Mart, he should have been released.

---

[10] ... *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25.

[11] ... *Kelly*, 204 S.W.3d at 819.

[12] ... *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

Instead, Appellant argues, the officers detained him until an arrest warrant could be obtained.

The Fourth Amendment protects against unreasonable searches and seizures by government officials.[13] To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct.[14] A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant.[15] Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable.[16]

Appellant's Detention Not Based on Arrest Warrant

The State argues that the trial court did not err by denying the motion to suppress because Investigator Burt knew that there were valid warrants for Appellant's arrest at the time of Appellant's detention. During the trial and outside the presence of the jury, Investigator Burt stated that there was at least

---

[13] U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24.

[14] *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App. 2009).

[15] *Amador*, 221 S.W.3d at 672.

[16] *Id*. at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

one warrant pending for Appellant's arrest. The State, citing *Rachal v. State*,[17] argues that Investigator Burt's statement can be considered when determining whether the trial court properly denied Appellant's motion to suppress.

In *Rachal*, the Texas Court of Criminal Appeals held that if the State raised an issue previously litigated in a suppression hearing at trial, either without objection or with subsequent participation in the inquiry by the defense, the defendant is deemed to have elected to re-open the evidence, and the reviewing court may consider the relevant trial testimony in its review.[18]

Here, after the State questioned Investigator Burt about other arrest warrants for Appellant, the following exchange took place,

> [DEFENSE COUNSEL]: Judge, I thought the evidence was closed on the Motion to Suppress. It's been ruled on and heard. It was denied. It's my recollection. I don't know if you want to try to reopen the evidence.
>
> [PROSECUTOR]: Your Honor, there was just some further questioning a while ago with him . . . about the warrant and when it was issued and that . . . brought this back up. And again, I . . . knew it wasn't proper to do it at the time because of the Jury being present.

---

[17] 917 S.W.2d 799, 809 (Tex. Crim. App.), *cert. denied*, 519 U.S. 1043 (1996).

[18] *Id.*

THE COURT:  Well, the Court made the ruling prior to hearing this other testimony, so . . . I'm not changing the Ruling.  I mean what—

[DEFENSE COUNSEL]:  Well, I understand, Your Honor, and you know, if they'd like to offer—to reopen the suppression, I mean, I think it's untimely at this point and if they would like to offer some warrants that he had, I mean, we met our burden of proof in the suppression hearing by showing that there wasn't a warrant that he knew of and if they know of a warrant, they should have brought it up at that time, but that time's come and gone.

After reviewing the record, we do not agree with the State that the suppression hearing was "clearly reopened."  Immediately after the State questioned Investigator Burt about his awareness of an arrest warrant, Appellant objected to the questioning and stated that the motion to suppress evidence had been closed.  Additionally, the trial court stated that it had denied the motion to suppress prior to hearing the new testimony.  Because Appellant objected to the testimony and did not question Investigator Burt about his statement, we hold that the suppression hearing was not reopened.

Because there was no evidence at the suppression hearing that the officers were aware of an outstanding arrest warrant at the time that Appellant was detained at the Wal-Mart, we hold that Appellant's detention was not based on an arrest warrant.  We must now determine whether there was

9

evidence at the suppression hearing to show that Appellant's seizure was reasonable.[19]

Appellant's Detention Was Based on Reasonable Suspicion

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts.[20] An officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law.[21] Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity.[22] This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists.[23]

---

[19] ... *Amador*, 221 S.W.3d at 672–73.

[20] ... *Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000).

[21] ... *Ford*, 158 S.W.3d at 492.

[22] ... *Id*. at 492.

[23] ... *Id*.

Because the trial court did not file findings of fact and conclusions of law, we must determine whether the evidence, viewed in the light most favorable to the trial court's decision to deny the motions to suppress, supports implied findings supporting that decision.[24] In other words, we must determine whether Investigator Burt and Officer Haldane testified to specific, articulable facts justifying Appellant's detention.[25]

Investigator Burt testified that he received a dispatch call that Appellant was at the Wal-Mart with Michael, one of the complainants in the March 15 robbery. Investigator Burt stated that Appellant was detained while the officers attempted to sort out the events of the disturbance. Additionally, he said that "when people are involved in a disturbance and there's not many people to go around, it's kind of standard procedure. You separate people, you detain them until you find out what was going on and any charges that were arising out of the current situation or not." Investigator Burt further stated that while the officers were sorting out the events of the disturbance, Sergeant Wright received a phone call that a warrant had been signed for Appellant's arrest in the robbery case.

---

[24] ... *See Kelly*, 204 S.W.3d at 819.

[25] ... *See id.*

Additionally, Officer Haldane testified that it would take the officers "quite some time" to sort out the events of the disturbance because of the number of people that reported the disturbance. She further stated that the disturbance was first reported as an incident involving a "subject with a knife," but it was later upgraded to a disturbance involving a person with a gun and that the parties involved in the disturbance were "chasing each other through [the] Wal-Mart."

It is apparent from the record that Appellant's detention was justified because the officers were trying to determine what happened at the Wal-Mart. According to both Investigator Burt and Officer Haldane, several people reported the incident, and the police had to follow up on the reports. Additionally, there were reports of a knife or gun being involved.

Appellant further complains that the length of his detention was unreasonable and that he was only being detained so that an arrest warrant could be signed. Appellant argues that he should have been released after the officers determined that he was not involved in any criminal activity. To begin with, we note that neither Investigator Burt nor Officer Haldane testified that Appellant was detained after it was determined that he was not involved in criminal activity at the Wal-Mart. Additionally, both Investigator Burt and Officer Haldane testified that Officer Haldane was already at the judge's office

12

getting the arrest warrant signed when she received the phone call that Appellant was involved in a disturbance at the Wal-Mart. Officer Haldane stated that it took approximately a minute to two minutes from the time that she received the phone call advising her that Appellant was involved in a disturbance to the time that she called Sergeant Wright and told him that the warrant had been signed.

Finally, during Appellant's cross-examination, Investigator Burt stated that the police officers on the scene were still sorting out the events of the disturbance when they received the phone call that the warrant had been signed. Thus, Appellant elicited the testimony that the officers were still investigating the Wal-Mart incident when the robbery arrest warrant was signed.

Consequently, we hold that the trial court did not err by denying Appellant's motion to suppress because the officers were in the process of investigating the Wal-Mart disturbance when Sergeant Wright received the phone call that an arrest warrant had been signed for the March 15 robbery. Additionally, there is nothing in the record to support Appellant's contention that he was detained longer than necessary for the purpose of obtaining an arrest warrant. Although the responding officer did not testify as to when Appellant's detention began, such evidence was unnecessary because

13

Investigator Burt testified that the officers were still sorting out the events of the disturbance when they were notified that the robbery arrest warrant had been signed.

Appellant's Arrest Also Lawful Under the Plain View Exception

Alternatively, Appellant could have been lawfully arrested when the officers realized that he was wearing stolen property. Article 14.01(b) of the Texas Code of Criminal Procedure provides that "[a] peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view.[26] The test for probable cause for a warrantless arrest is "whether at that moment the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense."[27] Investigator Burt testified that while the officers were investigating the disturbance at the Wal-Mart, Michael stated that Appellant was wearing Michael's shoes that had been stolen during the March 15 robbery. A person commits the offense of theft by possession

---

[26] Tex. Code Crim. Proc. Ann. art. 14.01(b) (Vernon 2005); *see also Miles v. State*, 241 S.W.3d 28, 39–40 (Tex. Crim. App. 2007); *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

[27] *Steelman*, 93 S.W.3d at 107 (quoting *Beverly v. State*, 792 S.W.2d 103, 105 (Tex. Crim. App. 1990)).

14

of stolen property when the person "unlawfully appropriates property with intent to deprive the owner of the property . . . [and] without the owner's effective consent."[28] Accordingly, the officers had probable cause to arrest Appellant for theft after Michael identified the shoes that Appellant was wearing were stolen in the robbery and the officers saw the shoes.[29]

We hold that the trial court did not err by denying Appellant's motion to suppress because the officers' detention of Appellant was reasonable and justified. The officers received reports of a weapon being involved in a disturbance, and during their investigation, they were notified that a warrant had been signed for Appellant's arrest in connection to the March 15 robbery. Alternatively, when it was brought to the attention of the officers that Appellant was wearing stolen property, the officers could have properly arrested Appellant without a warrant. Thus, we overrule Appellant's sole issue.

---

[28] ... Tex. Penal Code Ann. § 31.03(a), (b) (Vernon 2008).

[29] ... *See id.*

15

Conclusion

Having overruled Appellant's sole issue, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 31, 2010

16