

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00471-CR

STEPHEN SMITH                                                APPELLANT

V.

THE STATE OF TEXAS                                            STATE

----------

## FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Stephen Smith appeals his conviction for possession of a controlled substance with intent to deliver. In two issues, Smith argues that the trial court abused its discretion by denying his motion to suppress and by not suppressing evidence obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966). We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Denton County Sherriff's Office received information from a confidential informant that Smith was distributing methamphetamine. Investigator Bryan Wilkinson with the drug enforcement unit of the Denton County Sherriff's Office began working with the informant and corroborated some of the informant's information through surveillance and computer checks. Investigator Wilkinson arranged for the informant to make a "controlled buy" of methamphetamine from Smith. Investigator Wilkinson met with the informant around 4:00 p.m. on November 18, 2009, and after searching the informant and his vehicle, Investigator Wilkinson gave him two one-hundred-dollar bills to purchase approximately two grams of methamphetamine. Investigator Wilkinson followed the informant to the apartment complex where Smith lived. The informant never left Investigator Wilkinson's presence except when the informant went inside Smith's apartment to purchase the drugs.

Narcotics Investigator Shawn Clary was conducting surveillance on Smith's apartment, and he was there when Investigator Wilkinson and the informant arrived. Investigators Clary and Wilkinson watched Smith meet with the informant outside of Smith's apartment and then go inside the apartment. Approximately ten minutes later, Smith and the informant exited the apartment, walked to the parking lot, and talked for a few minutes before the informant got in his car and left.

Investigator Wilkinson followed the informant to a prearranged location about a mile away. The informant gave Investigator Wilkinson the methamphetamine he had just purchased from Smith, and Investigator Wilkinson searched the informant and his vehicle one more time. Investigator Clary arrived, and the informant told both officers that he had seen $17,000 in cash and a gun in Smith's apartment. Investigator Wilkinson called Lieutenant William David Scott and told him about the controlled buy. They decided to get an arrest and search warrant for Smith and his apartment. Investigator Wilkinson began drafting the search warrant to take to a judge for his signature, and Investigator Clary took the methamphetamine to the evidence room at the sheriff's office.

Lieutenant Scott drove to Smith's apartment complex to maintain surveillance, arriving between 5:45 and 6:00 p.m. After Investigator Clary delivered the drugs to the sheriff's office, he also drove to Smith's apartment complex to maintain surveillance, arriving around 6:00 p.m. At approximately 7:00 p.m., Smith exited his apartment carrying a car stereo. Lieutenant Scott and Investigator Clary got out of their vehicles and approached Smith in front of his car as he was walking up to it. It was dark outside, and Lieutenant Scott drew his taser, which has a flashlight on the end, and pointed the flashlight at Smith. Lieutenant Scott told Smith to "get on the ground." Smith complied, and Investigator Clary handcuffed him. Investigator Clary asked Smith if he was armed or had "any weapons, any sharp objects, any needles that's going to poke me." Smith responded that "what [they] were looking for was in his right front

3

pocket." Investigator Clary felt Smith's pockets and could tell something was inside one of them. Investigator Clary asked Smith if he could reach into Smith's pocket to get it, and Smith agreed. Investigator Clary pulled out an eyeglass case that contained three baggies of methamphetamine. The officers also found $4,600 in cash in Smith's wallet.

After Smith's arrest, Lieutenant Scott spoke with Investigator Wilkinson, who said that he was on his way to the judge's house to get the arrest and search warrant signed. The judge signed the warrant at 7:29 p.m., and Investigator Wilkinson took it to Smith's apartment. The officers found paraphernalia indicative of drug distribution inside the apartment, but they did not find any drugs, any guns, or the $17,000 in cash that the informant had said he saw in the apartment.

Smith entered an open plea of guilty to possession of a controlled substance with intent to deliver and pleaded true to two enhancement paragraphs. After a hearing, the trial court denied Smith's motion to suppress. The trial court sentenced him to life imprisonment.

### III. MOTION TO SUPPRESS

In his first issue, Smith argues that the trial court abused its discretion by denying his motion to suppress evidence obtained from a warrantless arrest. The State responds that the warrantless arrest was authorized under article 14.01 of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 14.01 (West 2005).

## A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion under a bifurcated standard of review. *Martinez v. State*, PD-1238-10, 2011 WL 2555712, at *2 (Tex. Crim. App. June 29, 2011); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim.

App. 2005); *Johnson*, 68 S.W.3d at 652–53. Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

## B. Law on Warrantless Arrests

All arrests without valid warrants are unreasonable unless shown to be within one of the exceptions to the rule that an arrest or a search must rest upon a valid warrant. *Wilson v. State*, 621 S.W.2d 799, 803–04 (Tex. Crim. App. [Panel Op.] 1981). Texas law provides for warrantless arrests only in certain, statutorily prescribed circumstances. *Dyar v. State*, 125 S.W.3d 460, 463 (Tex. Crim. App. 2003). A police officer may arrest an individual without a warrant only if probable cause exists with respect to the individual in question and the arrest falls within one of the exceptions set out in the code of criminal procedure.

6

*Torres v. State*, 182 S.W.3d 899, 901 (Tex. Crim. App. 2005); *see* Tex. Code Crim. Proc. Ann. arts. 14.01–.04.

Under article 14.01(b), "[a] peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." Tex. Code Crim. Proc. Ann. art. 14.01(b); *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002). The test for probable cause for a warrantless arrest under article 14.01(b) is "'whether at that moment the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense.'" *Steelman*, 93 S.W.3d at 107 (quoting *Beverly v. State*, 792 S.W.2d 103, 105 (Tex. Crim. App. 1990)). In other words, although the statute states that the offense must be one that is committed within the officer's presence or view, an officer can make a warrantless arrest based on an offense that was committed at an earlier time, and further, the officer does not even have to personally see the offense committed before the warrantless arrest is justified under article 14.01(b). *Beverly*, 792 S.W.2d at 105.

An officer's knowledge and trustworthy information may come from facts and circumstances obtained from lay citizens. *Id.*; *Akins v. State*, 202 S.W.3d 879, 889 (Tex. App.—Fort Worth 2006, pet. ref'd). If an officer has reasonably trustworthy information that, when coupled with the officer's personal observations, establishes probable cause to believe that an offense is being or has been committed, the warrant exception will apply. *Akins*, 202 S.W.3d at 889

7

(citing *Beverly*, 792 S.W.2d at 104–05). We look to the totality of the circumstances to determine if probable cause existed based on an informant's tip. *See Illinois v. Gates*, 462 U.S. 213, 250–54, 103 S. Ct. 2317, 2339–40 (1983); *Adkins v. State*, 764 S.W.2d 782, 785 (Tex. Crim. App. 1988); *Akins*, 202 S.W.3d at 889.

### C. Article 14.01(b)'s Warrant Exception Applies

Here, the evidence at the suppression hearing showed that Investigator Wilkinson had been familiar with the confidential informant for three weeks leading up to the controlled buy, that the investigator believed that the informant was credible and reliable, that the informant had given information in the past that lead to recovery of methamphetamine and persons involved in trafficking methamphetamine, and that information the informant had provided to officers about Smith had been corroborated by "surveillance and computer checks finding all information to be true and reliable." The evidence also showed that the informant completed a controlled buy of methamphetamine from Smith and that, after the controlled buy took place and after Investigators Wilkinson and Clary had obtained the purchased methamphetamine from the informant, Investigator Wilkinson relayed to Lieutenant Scott "exactly what was going on." Approximately one to two hours later, Lieutenant Scott and Investigator Clary arrested Smith for the controlled buy when Smith left his apartment.

Although neither arresting officer witnessed the controlled buy, Investigators Wilkinson and Clary were present outside of the apartment when

8

the controlled buy took place, and they debriefed the informant about the details of the buy immediately afterwards. We hold that, based on the collective information known by the officers from the confidential informant and the corroboration of that information, the officers were justified in arresting Smith without a warrant under article 14.01(b). *See* Tex. Code Crim. Proc. Ann. art. 14.01(b); *Akins,* 202 S.W.3d at 889 (upholding warrantless arrest based on informant's tip when offense did not occur in officer's view); *see also Woodward v. State*, 668 S.W.2d 337, 344 (Tex. Crim. App. 1982) (explaining that courts review totality of information known by all officers who cooperated and communicated during an investigation to determine whether probable cause existed), *cert. denied*, 469 U.S. 1181 (1985). Thus, viewing the evidence in the light most favorable to the trial court's ruling, we hold that the trial court did not abuse its discretion by denying Smith's motion to suppress. *See Wiede*, 214 S.W.3d at 24; *Kelly*, 204 S.W.3d at 818.

## IV. *MIRANDA* WARNINGS

In his second issue, Smith argues that the trial court abused its discretion by admitting evidence seized based on his statement that "what [the officers] were looking for was in his right front pocket" because he made that statement after he was arrested but before he received any *Miranda* warnings. The State argues that Smith failed to preserve this complaint for review.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds

9

for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Layton v. State*, 280 S.W.3d 235, 238–39 (Tex. Crim. App. 2009). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).

In this case, Smith did not allege in his motion to suppress or at the suppression hearing that his oral statement was obtained in violation of *Miranda*. Smith complained only that his detention and arrest were illegal without a warrant. Consequently, we hold that Smith did not preserve this issue for our review. *See* Tex. R. App. P. 33.1(a)(1); *Ranson v. State*, 707 S.W.2d 96, 99 (Tex. Crim. App.) (holding that any error in admission of portions of defendant's oral confession waived on appeal by failure to timely object), *cert. denied*, 479 U.S. 840 (1986). We overrule Smith's second issue.

## V. Conclusion

Having overruled Smith's two issues, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  October 27, 2011